# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### SOUTHERN DIVISION AT PIKEVILLE

HILDA L. SOLIS, Secretary of Labor,    :
United States Department of Labor,   :

                  :

        Plaintiff        :

                  :

v.                  :    Civil Action No. _____

                  :

FREEDOM ENERGY MINING COMPANY  :
&amp;                  :
SIDNEY COAL COMPANY, INC., d/b/a  :
FREEDOM ENERGY COAL COMPANY   :

                  :

        Defendants    :

## DECLARATION OF DAVID HARDIN

David Hardin makes the following declaration and states as follows:

1.    I am employed by the Federal Mine Safety and Health Administration (MSHA) as a Coal Mine Inspector. I have been in my current position for two years.

2.    I worked in the mining industry for approximately 18 years prior to my employment with MSHA. For 15 of those years, I was an equipment operator both on the working section and in the outer parts of the mine. I have operated most kinds of equipment including face drills, scoops, shuttle cars, bolting machines and continuous haulage equipment. For the last three years I worked as a foreman on the production shift and in the outby areas of the mine. I held a Mine Emergency Technician (MET) certificate since working in industry. I have participated in a number of impact inspections in my current position.

3.    I inspected the Freedom Energy No. 1 mine on September 2, 2010 as a part of a impact inspection. I found a number of conditions during this inspection. Some of these conditions existed for a number of shifts and had to have been seen by examiners but were not corrected.

4.    These conditions, when combined with other conditions found by inspectors present at the mine with me, are likely to result in a serious accident or mine disaster. The following conditions establish that the pattern of violations continues at this mine.

5.    On September 2, 2010 I found an accumulation of float coal dust on the 001 Mechanized Mining Unit (MMU) on the mine roof starting at the last open crosscut extending to the working faces in all of the headings on the unit in various locations (See Attachment 1, Citation No. 8250125). The mine roof was black in color for extended distances over the entire section. The presence of float coal dust on the working section where the coal is mined will increase the seriousness of any explosion occurring on the working section. If methane ignites on the section, the float coal dust will increase the explosive force present. One element of an explosion is suspension of a fuel source. Float coal dust is very volatile. It has a low combustion rate. For this reason, mine operators are required to cover the section with rock dust to eliminate this fuel source.

6.    I found accumulations of coal fines and float coal dust along the Number 21 belt line (See Attachment 2, Citation No. 8250128). Float coal dust was present along the entire beltline. Coal fines were under the head drive in depths of one to eight inches. Coal fines are finely crushed or powdered coal, as contrasted with the coarser fragments, which is smaller than 3.2 mm. The accumulations were black in color. I found these accumulations at 11:30 p.m. The belt was required to have been examined before the shift twice that day and if the third shift

was running the belts, a third preshift should have been conducted. I believe based on my mining experience and my experience and training as a Coal Mine Inspector that the condition took time to develop and was present during the various required examinations on September 2, 2010. In addition, it may have been present on September 1, 2010 or earlier. At least two or three agents of the operator should have seen the condition prior to this inspection. The current ventilation plan requires that the examiner call out and have such conditions corrected immediately. No one was working in the location, and the operator took no steps to eliminate the accumulations prior to issuance of the citation.

7.      On the adjacent No. 20 belt line, I found a piece of top structure on the bottom belt (Attachment 3, Citation No. 8250129). There were a number of damaged rollers in this location. Damaged, stuck or frozen rollers result frictional heating over time. If the rollers are not maintained, the friction combined with any coal fines or coal dust present, will cause a belt fire.

8.      Loose coal and coal fines were located along both sides of the No. 20 beltline in various locations (Attachment 4, Citation No. 8250131). Coal fines were located under the bottom rollers and under the take-up roller. These coal fines were reasonably likely to cause a belt fire or explosion. Coal fines are explosive in nature. Any frictional heating caused by damaged rollers could result in a belt fire.

9.      Combustible float coal dust was present inside the no. 20 belt starter box as well (Attachment 5, Citation No. 8250132). The starter box, which contains a number of electronic installations, cables and wires, provides an ignition source for the float coal dust. The float coal dust in the starter box is in a confined space with the heat source. Any spark or fault in

the box may easily ignite a fire or explosion when float coal dust is present. For this reason, it is critical to keep the starter box clean from coal dust.

10.    There were fallen pieces of draw rock on the No. 20 beltline as well (Attachment 6, Citation No. 8250139). Draw rock is immediate roof that falls out between roof bolts. The pieces of draw rock created a fall or tripping hazard in various locations along the entire beltline. Persons attempting to fight a belt fire would have limited access in this travelway as a result of the draw rock.

11.    I also found that a corner of a coal pillar was sheared off at the coal feeder on the 001 MMU (Attachment 7, Citation No. 8250126). This area was six feet wide and six feet long. The feeder is the location where coal is dumped off of the shuttle cars onto the belt haulage system. There is someone at the feeder almost continuously during the working shift. Shuttle cars pull into the feeder to dump their loads of coal. One or more persons regularly shovel coal to prevent accumulations at the feeder area. In addition, the scoop delivers supplies and travels by the feeder and the mine foreman travels in and out of the area. If a fall occurs at the feeder, it would likely seriously injure any of the people who frequent the feeder.

12.    The coal pillars are integral parts of the roof support system. The operator mines out entries between coal pillars. This area between the pillars is supported by a series of roof bolts placed in intervals that connect the strata above the mine roof. The weight of these layers is transferred to the ground below the mine floor through the coal pillars. The pillars must be maintained at minimum sizes and be intact to provide sufficient area to transfer this burden weight. The Freedom Energy No. 1 mine has a problem with the mine roof because of the location of the mine and the geology of the area. Because of the nature of the overburden in the

area, every part of the mine roof support is critical and management must give great attention daily to the roof conditions.

13.    The inspection that started on September 2, 2010, carried over to September 3, 2010. At 12:10 a.m. on September 3, 2010, I inspected the No. 19 beltline. The belt was running out of alignment at the No. 19 tailpiece (Attachment 8, Citation No. 8250133). The belt was rubbing against the top metal plate. This condition had existed long enough to create a great deal of frictional heating. The belt was extremely hot and blue smoke was coming from the location. The smoke and heat was sufficient to ignite coal or methane present on the belt.

14.    As a result of the conditions found on the belts during September 2-3, 2010, I found that the on-shift examinations conducted for the day shifts and evening shifts on September 1-2, 2010 were inadequate (Attachment 9, Citation No. 8250134). The on-shift examiners did not note the hazards I discovered on the No. 20 and No. 21 belts. The conditions were obvious and by the size of the accumulations and time required for the belt friction to heat to smoke, it is in my opinion that the on-shift examiners traveling in the area at any time on September 1 or 2, 2010 would have seen the condition. The ventilation plan required that the examiners call out any conditions found and that the operator correct such conditions immediately. Despite this requirement and despite the seriousness of the conditions, the operator did not take any steps to eliminate these hazards until MSHA issued citations.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this the 27 day of October 2010.

DAVID HARDIN
Coal Mine Inspector
Mine Safety and Health Administration
United States Department of Labor