UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, United States Department of Labor, | ) ) ) |
| Plaintiff, | ) Civil Action No. 10-132-ART ) ) |
| v. | ) **MEMORANDUM OPINION &** ) **ORDER** |
| FREEDOM ENERGY MINING CO., and SIDNEY COAL CO., INC., | ) ) ) |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

"*Whenever*," the statute says. "Whenever" the Secretary "*believes*" that a mine operator is engaged in a "pattern of violation" of safety standards—a pattern that, in her "*judgment*," constitutes a "hazard to the health or safety of miners"—she may come to court for relief. 30 U.S.C. § 818(a)(2) (emphasis added); *see also* Appendix A. The defendant mine operators nonetheless insist the Secretary must first exhaust her own administrative remedies. But the text of § 818(a)(2), whether considered alone or alongside the rest of the statute and regulations, is clear. The Secretary can come to court now.

### BACKGROUND

According to the complaint, the defendants have a habit of breaking the rules. R. 1 at 3. They purportedly failed to secure the mine roof against falls; failed to effectively ventilate the mine of methane and other gases; failed to clean up coal accumulations and other combustible materials; and failed to properly examine and maintain electrical equipment. *Id.* Believing that these infractions represent a "pattern of violation" and a "continuing hazard," the Mine Safety

and Health Act gave the Secretary of Labor two potential tools. She could follow the administrative process for redressing patterns under 30 U.S.C. § 814(e); *see also* Appendix B. Or maybe, for the first time in the Act's history, she could come to court for relief under 30 U.S.C. § 818(a)(2). She chose the second.

## DISCUSSION

The defendants say this suit is premature. The Secretary cannot yet ask this Court to remedy a pattern of violation under § 818(a)(2), they insist—even if there is a "continuing hazard." She has to exhaust the statute's administrative provisions first. *See* 30 U.S.C. § 814(e).

Not so. According to the plain language of § 818(a)(2)—so plain that the Court need not resort to the statute's legislative history, *see Olden v. LaFarge Corp.*, 383 F.3d 495, 502 (6th Cir. 2004)—the Secretary can come to court to eliminate the "continuing hazard" without trudging through a series of administrative procedures. It says she can come "whenever." 30 U.S.C. 818(a)(2). Not "whenever" she has officially determined that there is "pattern of violations," but "whenever" she "believes" there is a pattern which, in her "judgment," represents a "continuing hazard." *Id.* As another judge of this court has concluded, "[T]his grant of standing appears to be based entirely on the Secretary's good-faith belief that a suspected continuing pattern of violations is being committed by one she believes to be an operator." *Chao v. Simpson Mining Co., Inc.*, No. 06-87, 2006 WL 1766563, at *3 (E.D. Ky. June 23, 2006).

The text of the administrative-remedies section of the statute, 30 U.S.C § 814, does not, as the defendants argue, change that. It says that where an operator "has a pattern of violations" that "significantly and substantially contributed to the cause and effect of coal or other mine

2

health or safety hazards," the Secretary "shall" give the operator "written notice that such pattern exists," *id.* § 814(e)(1), and then, if she discovers additional "significant and substantial" violations afterward, "shall" issue orders to withdraw people from areas affected by the new violations, *id.* § 814(e)(1), (2).

Yes, this administrative section also refers to a "pattern of violations." And the defendants are correct that "pattern of violations" in § 814 and "pattern of violation" in § 818 are best read to mean the same thing, as it is a "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Gufstafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995); *see also* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words importing the singular include and apply to several persons, parties, or things; [and] words importing the plural include the singular[.]"). But that does not mean that § 814 and § 818 form one continuous procedural sequence, with the § 814 procedures necessarily coming first. They address two different situations: The administrative § 814 says little about what the Secretary can do when she "believes" an operator "is engaged" in a pattern of violation that represents a "continuing hazard,"*id.* § 818(a)(2)—words that do not appear in § 814. Instead, § 814 tells the Secretary what to do if a mine operator "*has* a pattern of violations" that "could have significantly and substantially contributed to the cause and effect of coal or other mine health or safety hazards" and the operator commits another similar violation. *Id.* § 814(e)(1).

The whole process looks like this: The Secretary conducts "frequent inspections" of a mine. 30 U.S.C. § 813(a). During an inspection, she comes to believe there is a violation of

3

mandatory health and safety regulations. She then issues a citation. *Id.* § 814(a). The operator fails to resolve the problem and the Secretary orders personnel withdrawn from the affected area. *Id.* § 814(b). These events repeat themselves. She has a good-faith belief there is a pattern, though the agency has not yet declared it so. If, in her judgment, the pattern represents a "continuing hazard," she can go to court to seek appropriate relief—perhaps while simultaneously engaging her own administrative process to compliment any equitable relief she might get, a not unheard-of duality. *See, e.g., FDIC v. Grillo*, 788 F. Supp. 641, 647 (D.N.H. 1992) ("The claimant may pursue the court action simultaneously with the administrative claims resolutions process."); 42 U.S.C. § 3610(e) ("The commencement of a civil action under this subsection does not affect the initiation or continuation of administrative proceedings under this section and section 3612 of this title."). If not, she moves forward with her own internal procedures for definitively concluding there *is* a pattern, *see* 30 C.F.R. § 104.1-104.4, and then stopping it.

Reading § 818(a)(2) literally to give the Secretary discretion as to when to come to court better fits with the rest of the statute. *See United States v. Branson*, 21 F.3d 113, 116 (6th Cir. 1994) ("Statutes must be read as a whole[.]"). Consider the defendants' alternative. By their lights, the Secretary can only seek § 818(a)(2) relief once she has completed the administrative process, has issued an order to withdraw people from affected areas of the mine, and yet still has been unsuccessful in ending the pattern of violations and the continuing hazard. But another provision of § 818 already permits the Secretary to do just that. Section 818(a)(1)(A) authorizes her to "institute a civil action for relief" if an operator "violates or refuses to comply with any

4

order or decision issued under this chapter[.]" The defendants respond that the Court's powers under § 818(a)(2) are much broader than under § 818(a)(1). They insist that, under (a)(2), the Court could shut down an entire mine, whereas under (a)(1), the Court's relief must be limited to enforcing the Secretary's order. But that is not what the statute says. Much like § 818(a)(2), § 818(a)(1) defines relief for failing to obey the Secretary's orders broadly—"including a permanent or temporary injunction, restraining order, or *any other appropriate order*." (emphasis added). The defendants' reading thus comes perilously close to violating "one of the most basic interpretive cannons," rendering § 818(a)(2) superfluous. *Corley v. United States*, 129 S. Ct. 1558, 1566 (2009).

It is true that another provision authorizes the Secretary to order a mine operator to withdraw people from an area to avoid danger without completing the administrative process. 30 U.S.C. § 817(a). But that does not render the literal reading of § 818(a)(2) superfluous. Section 817 only authorizes the Secretary to act—not just before completing the administrative process, but without agreement of a court—where there is an "imminent danger." Section 818(a)(2), in contrast, allows the Secretary to act where the danger is less than imminent but still continuing—with agreement of a court. Only underscoring the difference, § 817(a) only authorizes the Secretary to order people withdrawn from imminently dangerous areas of a mine, whereas the Court's equitable powers are much broader under § 818(a)(2)(b).

The defendants are wrong about the statute. But they might argue that, despite Congress's statutory grant of discretion, the Secretary's own regulations have boxed her in. Section 814(e)(4) directs the Secretary to "make such rules as [she] deems necessary to establish

5

criteria for determining when a pattern of violations of mandatory health or safety standards exists." In turn, the argument goes, the Secretary has promulgated criteria for identifying a "pattern of violation[s]"—presumably under both § 814 and § 818—that include mandatory procedural elements. *See* 30 C.F.R. § 104.1 ("This part establishes the criteria and *procedures* for determining whether a mine operator has established a pattern[.]") (emphasis added). Under the regulation's procedures, the agency "shall" conduct annual screening of mines' compliance records; the agency "shall" notify mine operators of any "potential pattern of violations"; and so forth until the agency "shall issue a decision as to whether the mine is to be issued a notice of a pattern of violations." *See* 30 C.F.R. § 104.1-104.4.

About these regulations, the defendants may have intended to argue as follows: First, the criteria the Court must use to determine whether a "pattern of violation" exists are both substantive and procedural. That is, the Court cannot find that a § 818(a)(2) "pattern of violation" exists until the agency has completed the procedural prerequisites it has itself listed as criteria. Second, the Secretary has written the procedures in such a way that she cannot avoid following them before coming to court. Even before she has discovered a "potential" pattern—even before she could possibly "believe" there is a pattern—the regulations impose mandatory procedures. She must conduct annual screenings for potential patterns. From there, she is stuck on a continual chain of compulsory next steps—she "shall" notify operators of potential patterns, and she "shall" issue a final notice that there *is* a pattern—that she must exhaust. Until she has done so, she lacks the authority to come to court.

There are problems with this argument. To the extent questions about the agency's

6

regulations are about the merits of the claim for injunctive relief, it is not clear the procedures are really "criteria" or "elements" for proving that a "pattern of violation" exists. The regulations, with their procedural and substantive components, are not written solely to identify the criteria of a pattern of violations. Indeed, the regulations' preamble says they are intended to compliment the entirety of 30 U.S.C. 814(e)—the statutory administrative provisions—and not just the subsection directing the agency to provide pattern criteria. 30 C.F.R. § 104.1.

And to the extent questions about the agency's regulations are really about the Secretary's standing—the circumstances under which the Secretary is authorized to come to court for relief, rather than the merits of the request for injunctive relief—it is not clear whether an agency's regulations can deprive it of standing Congress specifically granted. As the court held in *Schering Corp. v. FDA*, 866 F. Supp. 821, 824 (D.N.J. 1994) (internal quotations omitted), an agency's regulations at least cannot *create* standing, because "the issue of standing is one of interpreting congressional intent: Congress can, of course, resolve the question of standing one way or another, save as the requirements of Article III dictate otherwise."

But even assuming the regulations do mix procedural elements into the criteria for defining a "pattern of violation," and even assuming that the regulations and § 814 do bind the Secretary to follow the administrative process well before she "believes" there is a pattern, the Secretary can still come to court before the process is complete. At the very least, the Secretary could, with a good-faith belief that a pattern exists and a showing of likelihood of ultimate success on the merits, ask the Court for a "temporary injunction, restraining order, or any other appropriate order," 30 U.S.C. § 818(a)(2), to halt the conditions creating the "continuing hazard"

7

while the Secretary completes the administrative process.

One final point: The defendants might argue that the Secretary must complete the administrative process before coming to court because the agency has "exclusive" jurisdiction to render factual conclusions about whether certain conduct is a "violation," and thus whether there is a pattern of violations. *See* R. 41 at 4. But to support the view that the Court lacks jurisdiction to make such factual determinations, the defendants cite *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). The *Thunder Basin* Court held only that the extensive administrative procedures under § 814 barred district courts from hearing pre-enforcement challenges by mine operators. *Id.* This is neither a pre-enforcement challenge nor a challenge by mine operators. Further, even if the agency does have exclusive fact-finding jurisdiction, *Thunder Basin* offers no indication that the Secretary cannot come to court and seek a preliminary injunction while the administrative fact-finding process is ongoing.

## CONCLUSION

The defendants' only other argument for dismissal is that the plaintiff failed to adequately plead her claim for relief. The plaintiff has filed a more detailed amended complaint, R. 47, and so the issue is now moot. Accordingly, it is **ORDERED** that the motion to dismiss, R. 35, is **DENIED**.

This the 22nd day of December, 2010.



Signed By:
*Amul R. Thapar*
United States District Judge