UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

---

|  |  |  |
|---|---|---|
| HILDA L. SOLIS, Secretary of Labor, | : | |
| United States Department of Labor, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 10-132 ART |
| | : | |
| FREEDOM ENERGY MINING COMPANY, | : | |
| and | : | |
| SIDNEY COAL COMPANY, INC.  d/b/a | : | |
| FREEDOM ENERGY MINING COMPANY, | : | **AMENDED COMPLAINT** |
| | : | **(Injunctive Relief Sought)** |
| Defendants. | : | |

---

## SECOND AMENDED COMPLAINT

Plaintiff, HILDA L. SOLIS, Secretary of Labor, United States Department of Labor, seeks injunctive and other relief against Defendants FREEDOM ENERGY MINING COMPANY and SIDNEY COAL COMPANY, INC.  doing business as FREEDOM ENERGY MINING COMPANY under Sections 108(a)(2) and 108(b) of the Mine Safety and Health Act of 1977, as amended ("Mine Act"), 30 U.S.C. §§ 818(a)(2) and 818(b), based on the Secretary's belief that Defendants are engaged in a pattern of violation of mandatory health and safety standards that, in the Secretary's judgment, constitutes a continuing hazard to the health or safety of miners.

## A.  JURISDICTION

Jurisdiction of this action is conferred upon this Court by Section 108(b) of the Mine Act, 30 U.S.C. § 818(b), and 28 U.S.C. §§ 1331 and 1345.

## B.  VENUE

Venue of this action lies in the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville, pursuant to Section 108(a)(2) of the Mine Act, 30 U.S.C. § 818(a)(2).

## C.  FREEDOM ENERGY MINING COMPANY AND  SIDNEY COAL COMPANY, INC. ARE OPERATORS OF A COAL OR OTHER MINE

1.      FREEDOM ENERGY MINING COMPANY is a company engaged in the business of mining coal in Pike County, Kentucky, within the jurisdiction of this Court.

2.      At all relevant times FREEDOM ENERGY MINING COMPANY'S Mine # 1 was an underground coal mine in Pike County, Kentucky, and is a "coal or other mine" within the meaning of Mine Act Section 3(h), 30 U.S.C. § 802(h).

3.      At all relevant times, the products of  Mine #1 entered commerce, or the operations or products of Mine #1 affected commerce, within the meaning of Sections 3(b) and 4 of the Mine Act, 30 U.S.C. §§ 802(b) and 803.

4.      At all relevant times, FREEDOM ENERGY MINING COMPANY was, and continues to be, an "operator" of a "coal or other mine" within the meaning of Sections 3(d) and 3(h) of the Mine Act, 30 U.S.C. §§ 802(d) and 802(h).

5.      At all relevant times, FREEDOM ENERGY MINING COMPANY was a trade  name of, or wholly owned subsidiary of, SIDNEY COAL COMPANY, INC.

6.      At all relevant times, SIDNEY COAL COMPANY, INC. was, and continues to be, an "operator" of a "coal or other mine" within the meaning of Sections 3(d) and 3(h) of the Mine Act, 30 U.S.C. §§ 802(d) and 802(h).

## D.  PATTERN OF VIOLATION

7.      Since on or about July 1, 2008, and continuing to date, FREEDOM ENERGY MINING COMPANY and SIDNEY COAL COMPANY, INC. d/b/a FREEDOM ENERGY MINING COMPANY ("Defendants") violated, at Mine #1, mandatory health and safety provisions promulgated under the Mine Act, for which violations the Mine Safety and Health Administration ("MSHA") issued at least 1,952 citations and orders, at least 1,179 of which were for violations of critical mandatory safety and health standards described in paragraph 8, and at least 353 of which alleged "significant and substantial" ("S&S") violations.[1]

8.      In the Secretary's belief, Defendants are engaged in patterns of violation of failing to examine and maintain critical areas of Mine #1, within the meaning of Section 108(a)(2) of the Mine Act, 30 U.S.C. § 818(a)(2), as demonstrated by their continuing violations of the following mandatory health or safety standards:

    a.      failure to protect the roof, face, and ribs from falls and maintain an effective roof control plan, in violation of  30 C.F.R. § 75.202(a) (protection from falls of roof, face and ribs), and 30 C.F.R. § 75.220(a)(1) (roof control plan), for which 190 citations and orders were issued, of which 128 were designated as S&S,;

    b.      failure to effectively ventilate the mine of methane and other gases, in violation of 30 C.F.R. § 75.370(a)(1) (ventilation plan), for which 216 citations and orders were issued, of which 52 were designated as S&S;

---

[1]  A violation is designated as significant and substantial ("S&S") if, based on the particular facts surrounding that violation, there is a reasonable likelihood the hazard contributed to by the violation will result in an injury or an illness of a reasonably serious nature.

      c.      failure to clean up coal accumulations and other combustible materials, in violation of 30 C.F.R. § 75.400 (accumulation of combustible materials), for which 342 citations and orders were issued, of which 71 were designated as S&S;

      d.      failure to properly examine, test and maintain electrical equipment so as to protect against fire, explosion and other hazards, in violation of 30 C.F.R. § 75.503 (permissible electric face equipment; maintenance) and 30 C.F.R. § 75.512 (electric equipment; examination, testing, and maintenance), for which 260 citations and orders were issued, of which 85 were designated as S&S; and,

      e.      failure to adequately conduct required mine examinations in violation of 30 C.F.R. §§ 75.320, 75.336, 75.360, 75.362, 75.363, 75.364, 75.512, 75.512-2, 75.1101-11, 75.1103-8, 75.1107-16, 75.1400-2, 75.1400-3, 75.1400-4, and 75.1507, for which 171 citations and orders were issued, of which 17 were designated S&S, as a result of which the hazardous conditions for which the citations and orders described in paragraphs 7 and 8(a)-(d) were issued were not identified, recorded, and/or corrected or posted (*i.e.*, dangered-off).

### E.  THE PATTERN CONSTITUTES A CONTINUING HAZARD TO MINERS

9.      In the Secretary's judgment, Defendants' patterns of violation of mandatory health or safety standards identified in Paragraphs 7 and 8, above, constitute continuing hazards to the health and safety of miners, in that Defendants patterns of violation show no signs of diminishing, as demonstrated by 38 recent S&S violations:

      a.      11 S&S violations of roof-related standards (30 C.F.R. §§ 75.202(a) and 75.220(a)(1)), between September 2, 2010, and November 16, 2010;

      b.      13 S&S violations of ventilation-related standards (30 C.F.R. §§ 75.370(a)(1), 75.321(a)(1), 72.630(b), and 75.337(a)) between January 15, 2010, and May 17, 2010;

      c.       5 S&S violations of accumulations-related standards (30 C.F.R. § 75.400) between June 10, 2010, and September 2, 2010;

      d.       6 S&S violations of electrical-related standards (30 C.F.R. §§ 75.503 and 75.512) between September 15, 2010, and October 20, 2010; and,

      e.       3 S&S violations of mine-examination-related standards (30 C.F.R. §§ 75.360 and 75.362) between September 3, 2010, and September 21, 2010.

10.     The permanent closure of Mine #1, announced by the Defendants on November 29, 2010, will not, in the Secretary's judgment, diminish the hazards posed by the patterns of violation described in paragraphs 7, 8, and 9 because:

      a.       removing large pieces of equipment from the mine presents a continuing hazard in light of the Defendants' past difficulties when moving equipment to new sections, which have resulted in dislodging cribs and roof bolts providing roof support, and which the Defendants failed to timely repair or replace;

      b.       two roof falls have occurred since Defendants' announcement that the mine is no longer producing coal;

      c.       since production of coal ceased, methane levels have decreased but remained above 500,000 cubic feet of methane per twenty-four hours, which is high enough to qualify for 10-day spot inspections under Section 103(i) of the Mine Act (30 U.S.C. § 813(i));

      d.       the two most recent roof falls occurred in areas that were critical to ventilation (one in the bleeder and one in the belt return) and, therefore could result in a build-up of methane in those areas;

      e.       there is a seal, between Mine #1 and an adjacent mine operated by another operator, that can only be inspected via Mine #1, and which, if compromised, could endanger miners

on both sides;

f.      the removal of equipment presents a hazard of ventilation controls being struck and damaged, and the Defendants have not timely repaired or replaced ventilation controls when necessary in the past;

g.      closure of the mine requires a large increase in the amount of electrical work, increasing the risk that unqualified miners will be -- as they have been in the past -- assigned to perform those tasks;

h.      closure of the mine requires miners to travel frequently through areas that have been travelled only rarely during active mining;

i.      removal of equipment will greatly increase the stress on the hoist line, which is located in the mine's escapeway, and the failure of which could gravely endanger life, thus requiring more frequent and more vigilant examinations of that equipment;

j.      the removal of equipment risks dispersal of coal dust accumulations already present around and beneath that equipment;

k.      until the belt is removed it can be run, thus presenting the hazard of additional coal dust accumulations;

l.      when the Defendants begin to remove the belt, the carbon monoxide detection system will no longer operate, increasing the risk that fires will not be detected; and,

m.      the risk of fires will remain or increase because there will be (in addition to the ignition sources described above) welders working on structures and (as described above), continuing methane presence and the potential for methane build-up.

11.      Based on the allegations in paragraphs 7, 8, 9, and 10, the Secretary has reasonable cause to believe that the continued issuance of citations and withdrawal orders, whether or not

designated S&S, and the continued imposition of civil penalties, will not suffice to ensure Defendants' continued compliance with mandatory health and safety standards following the abatement of individual violations, that such compliance will not continue once MSHA inspectors leave the mine, and that in the absence of an injunction, Defendants will continue to engage in patterns of violation of mandatory health and safety standards that will continue to constitute a hazard to the health and safety of miners.

## F.  PRAYER

12.     WHEREFORE, cause having been shown, Plaintiff, Secretary of Labor, prays for an order pursuant to Section  108 (b) of the Mine Act, 30 U.S.C. § 818 (b), enjoining FREEDOM ENERGY MINING COMPANY, SIDNEY COAL COMPANY, INC., doing business as FREEDOM ENERGY MINING COMPANY, and all agents, servants, employees, contractors, and subcontractors thereof,  and all persons in active concert or participation with them, from violating the Mine Act and the mandatory health and safety standards promulgated thereunder until such time as the mine is permanently closed and sealed by Freedom in a manner approved by the Secretary.

13.     Plaintiff further prays for an Order requiring FREEDOM ENERGY MINING COMPANY and SIDNEY COAL COMPANY, INC. doing business as FREEDOM ENERGY MINING COMPANY, to establish, implement, and maintain, an effective written health and safety management program which will provide for the recovery of equipment in a safe manner, and institute other practices that will ensure the health and safety of the miners working at the mine, to include the following:

a.     establish and maintain an equipment recovery plan that will be reviewed and approved by MSHA; such recovery plan will be submitted to MSHA for review and approval whenever there are changes or modifications to the plan; the recovery plan shall include but not be

limited to the following: a schedule for removing equipment, including continuous mining equipment, roof bolting equipment, track equipment, belts, electrical equipment, and all shuttle cars, vehicles and other equipment used underground, from the mine in an orderly way that insures water pumps and other electrical equipment and ventilation controls that are being removed are removed in a manner that will not result in a change affecting the weekly examinations; maintenance of a tracking and communications system during all times that miners will be underground; maintenance of ability to monitor for CO and other noxious gases during all times that miners are underground and provide for the maintenance of ventilation controls and presently developed escapeways; provide a map of underground electrical installations and plans for dismantling each installation under the direct supervision and control of a qualified electrician; provide appropriate protections when welding equipment is in use; provide for a regular inspection of the roof in all areas where miners work or travel; and any other such actions that MSHA deems necessary to recover the mine in a safe manner including maintenance and inspection of all seals;

       b.     such recovery plan shall require Defendants to predetermine which areas of the mine, in accordance with the schedule and time tables for removing equipment, will be subject to the requirements of pre-shift, on-shift, or weekly examinations, and proper examinations shall be performed by qualified examiners  before miners are assigned to work or travel in those areas;

       c.     require Defendants' highest-level management officials, including the Mine Superintendent and the Chief Electrician, to personally conduct additional examinations of mobile and electrical equipment and areas of the mine where miners will work or travel, when said equipment is being moved from its permanent or temporary location to another location either inside or outside the mine; when equipment is moved in the mine and damages permanent roof support or

cribs or ventilation controls, the roof support, cribs, or ventilation controls shall be immediately replaced or repaired.

d.      require Defendants' Mine Superintendent or Chief Electrician to examine, prior to moving or transporting any equipment, the unit of equipment to ensure that coal dust, float coal dust, loose coal, oil, grease, and other combustible materials have been cleaned up and have not accumulated on such unit of equipment and require the Chief Electrician to examine all devices provided for short circuit protection to ensure that proper short circuit protection exists; a record of such examinations shall be kept and  made available to an authorized representative of the Secretary upon request;

e.      require Defendant to provide direct supervision by a mine foreman when equipment is moved or transported; said mine foreman shall be physically present at all times during moving or transporting operations; no person shall be permitted to be in the ventilating current of air that is passing over such equipment, except those person directly engaged in moving or transporting such equipment;

f.      require Defendants to ensure that other areas of the mine, and equipment therein, are examined for hazardous conditions and violations, and ensure that such conditions and violations are corrected before work or travel in such areas is conducted (except for those persons listed in Section 104(c) of the Mine Act, 30 U.S.C. §814(c))  or equipment is removed;

g.      require Defendants' highest-level management officials, including the Mine Superintendent, to review and countersign by the end of the working shift the results of each exam and verify all identified hazards have been corrected before work or travel in such areas is conducted (except for those persons listed in Section 104(c) of the Mine Act, 30 U.S.C. §814(c)) or equipment is removed;

9

h.      require Defendants to take additional air quantity and quality readings in specific areas of the mine as stipulated in the recovery plan;

i.      require Defendants to certify the accuracy of the 30 C.F.R. §75.1200 surface map and underground escapeway maps on a daily basis;

j.      require Defendants to maintain a record of any methane detected in excess of 1% on any section and 2% in any other active workings using a methane or multi-gas detector carried by any person underground;

k.      require Defendants' management officials and supervisors to assign miners to work only in areas and tasks they are qualified and trained to do such work;

l.      require Defendants to provide task training to miners by a knowledgeable supervisor for each job which miners are assigned to, and maintain a record of such training signed by the miner's supervisor;

m.      for any hazardous condition, or for any violation of safety or health standards related to roof control, ventilation, coal accumulations, electrical equipment, or examinations, found by the Secretary, in any area where equipment removal operations are occurring, require Defendants to immediately withdraw all miners (except for those persons listed in Section 104(c) of the Mine Act, 30 U.S.C. §814(c)) from that area until such condition or violation is abated and a complete examination has been conducted on that area;

n.      for any hazardous condition, or for any violation of safety or health standards on any equipment, found by the Secretary, Defendants shall immediately withdraw such equipment from service (except for those persons listed in section 104(c) of the Mine Act, 30 U.S.C. §814(c)) until such condition or violation is abated;

o.      where miners are idled as a result of any withdrawal covered by this Complaint require Defendants to pay the affected miners for any time period such miners are so idled;

p.      require Defendants to provide the Secretary with copies of any citations or violations issued by any state or other federal enforcement agency, within twenty four hours of issuance by such enforcement agency;

q.      require Defendants to provide the Secretary, upon request, all methane and/or multi-gas detectors with data logging capability used by any person underground with a list of the dates and times each monitor was carried by any person underground, and with copies of the results of any examinations;

r.      require Defendants to send a copy of all citations and orders to all their employees, including clerical employees, guards, contractors, and underground miners, and post all citations and orders at the mine bathhouse, guard shack, website, and mine bulletin board;

s.      require Defendants to inspect the hoist rope for the effects of increased stress, strain, and wear before each use of the hoist in the removal of equipment and to ensure it is not being used to pull weight beyond the manufacturer's design capacity;

t.      require Defendants' management officials and supervisors to train and brief miners on the conditions of the area of the mine before they are assigned to enter and work in such area and inform the miners of the hazardous conditions found and corrected during the pre-shift examination;

u.      require the Defendants to maintain at least two separate and distinct travelable passageways which were designated as escapeways prior to the mine being put in nonproducing status and meeting the requirements set forth in 30 C.F.R. Section 75.380 at all times while miners

are underground at the mine.

    14.    Plaintiff further prays for all other appropriate relief.

<div style="margin-left:50%">

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

STANLEY E. KEEN
Regional Solicitor

THERESA BALL
Associate Regional Solicitor


/s/  Mary Sue Taylor
MARY SUE TAYLOR
Trial Attorney

Office of the Solicitor
U. S. Department of Labor
618 Church Street, Suite 230
Nashville, Tennessee 37215-2862
Phone:  (615) 781-5330 ext. 225
Fax: (615) 781-5321
E-mail:   nash.fedcourt@dol.gov
        Taylor.Mary@dol.gov

</div>

HEIDI W. STRASSLER
Associate Solicitor for
Mine Safety and Health

THOMAS A. PAIGE
KEITH E. BELL
Co-Counsels for Trial Litigation

/s/   Joshua P. Falk
JOSHUA P. FALK
Trial Attorney

U.S. Department of Labor
Office of the Solicitor
Mine Safety & Health Division
1100 Wilson Blvd, 22nd Floor
Arlington, Virginia 22209-2296
Email: falk.joshua@dol.gov

Attorneys for the Secretary