UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

_____

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, | : |
| United States Department of Labor, | : |
| | : |
|      Plaintiff, | : |
| | : |
| v.                         : | : Civil Action No. 10-132-ART |
| | : |
| FREEDOM ENERGY MINING COMPANY, | : |
| and | : |
| SIDNEY COAL COMPANY, INC., d/b/a | : |
| FREEDOM ENERGY MINING COMPANY, | : |
| | : |
|      Defendants. | : |

_____:

<u>AGREED ORDER FOR SETTLEMENT</u>

This matter having come before the Court upon the Joint Motion of the parties for entry of this Agreed Order, and the Court having considered the motion and being advised, and the parties being in agreement, it is ORDERED that the Joint Motion of the parties for entry of this Agreed Order should be, and hereby is, GRANTED.

This action was brought by the Secretary of Labor, United States Department of Labor, against Defendants FREEDOM ENERGY MINING COMPANY and SIDNEY COAL COMPANY, INC. doing business as FREEDOM ENERGY MINING COMPANY (hereinafter collectively referred to as "Freedom"), pursuant to Sections 108(a)(2) and 108(b) of the Federal Mine Safety and Health Act of 1977, as amended ("Mine Act"), 30 U.S.C. § 818(a)(2) and 818(b). In her pleadings

1

and other filings, the Secretary alleges her belief that Freedom has engaged in a pattern of violation of the mandatory health or safety standards within the meaning of Section 108(a)(2) of the Mine Act, 30 U.S.C. § 818(a)(2), which, in her judgment, constitutes a continuing hazard to the health or safety of miners.

FREEDOM has voluntarily ceased production activities at Mine #1, and is in the process of removing all mining equipment from the mine, with the intent of permanently sealing and abandoning the mine. Freedom admits to the jurisdiction of this Court over them and, for purposes of this Agreed Order only, over the subject matter of this action, and, while denying the existence of any pattern of violations, has agreed to entry of this Agreed Order, as follows

1.   Jurisdiction of this action is conferred upon this Court by Sections 108(a)(2) and 108(b) of the Mine Act, 30 U.S.C. § 818(a)(2) and 818(b), Federal Rule of Civil Procedure 65, and 28 U.S.C. § 1331 and 1345.

2.   Mine #1 is an underground coal mine in Pike County, Kentucky, the operations or products of which affect commerce, and is thus a "coal or other mine" within the meaning of Sections 3(h) and 4 of the Mine Act, 30 U.S.C. §~802(h) and 803. The Court finds that  FREEDOM ENERGY MINING COMPANY is a trade

name of, or a wholly owned subsidiary of, SIDNEY COAL COMPANY,
INC. The Court finds that FREEDOM ENERGY MINING COMPANY and
SIDNEY COAL COMPANY, INC. doing business as FREEDOM ENERGY
MINING COMPANY are operators of Freedom Mine #1  within the
meaning of Section 802(d) of the Mine Act, 30 U.S.C. §802(d).
This Court, therefore, has jurisdiction over Freedom and Mine
#1.

3.   It is  ORDERED that  FREEDOM , and all agents,
servants, employees, contractors, and subcontractors thereof,
and all persons in active concert or participation with it
comply with the following recovery plan in a manner that will
ensure the health and safety of the miners working at the mine.
Supplemental timetables for the sequence of events and locations
of air readings including a map showing locations shall be
submitted to the district office within two working days of
entry of this order.  The plan is as follows:

a.   identify a process which includes timetables a̶
for activities for removing equipment, including continuous
mining equipment, roof bolting equipment, track equipment,
belts, electrical and/or diesel equipment, and all shuttle cars,
vehicles and other equipment used underground, from the mine in
an orderly way that insures water pumps and other electrical
equipment and ventilation controls being removed are removed in
a manner that will not result in a change adversely affecting

3

the health or safety of persons in the mine; provide appropriate protections when welding or cutting equipment is in use; perform one additional recorded examination for smoldering or hot spots at all areas where cutting or welding was performed no earlier than four hours and no later than six hours after the cutting or welding occurred; maintain a tracking and communications system during all times that miners will be underground; and provide for the maintenance of ventilation controls and presently developed escapeways; provide a map of underground electrical installations and provide for dismantling each installation under the direct supervision and control of a certified electrician who is an agent of the operator with commensurate experience for the work performed; provide for a regular inspection of the roof in all areas where miners work or travel; and any other such actions under 30 C.F.R. that are deemed necessary to recover the mine in a safe manner including maintenance and inspection of all seals;

b.   require Freedom to predetermine those areas of the mine, in accordance with the process for moving equipment, that will be subject to the requirements of pre-shift, on-shift, or weekly examinations, and proper examinations shall be performed by certified examiners before miners enter the area to work or travel in those areas;

c.   require Freedom's Chief Electrician, as

4

appropriate, pursuant to state certifications and
qualifications, to personally conduct additional examinations of
energized mobile and electrical equipment when said electrical
equipment is moved in the mine;

   d. require Freedom's Mine Superintendent or Chief
Electrician to examine, prior to moving or transporting any
energized mobile equipment,  to ensure that coal dust, float
coal dust, loose coal, oil, grease, and other combustible
materials have been cleaned up and have not accumulated on such
unit of energized equipment and require the Chief Electrician or
otherwise certified electrician who is an agent of the operator
to examine all devices provided for short circuit protection to
ensure that proper short circuit protection exists; a record of
such examinations shall be kept and made available to an
authorized representative of the Secretary upon request;

   e. require Freedom to provide direct supervision by
a certified foreman when large equipment, such as section power
centers, face equipment and belt drives, is moved or
transported; said foreman shall be physically present at all
times during moving or transporting such equipment, and will
check for damage to permanent or supplemental roof support or
ventilation controls underground, and see that any such damage
is immediately replaced or repaired; no person shall be
permitted to be in the ventilating current of air that is

passing over such energized mobile equipment, except those persons directly engaged in moving or transporting such equipment;

f.    require Freedom to ensure that areas of the mine, and equipment therein, are examined as required by law for hazardous conditions and violations, and ensure that such conditions and violations are corrected before work or travel in such areas is conducted (except for those persons listed in Section 104(c) of the Mine Act, 30 U.S.C. §814(c)) or equipment is removed:

g.    require the highest level management official of Freedom available at the mine during each working shift, including the Mine Superintendent, to review and countersign by the end of the working shift the results of each exam and verify (provided that the person verifying may rely on representations made by others) all identified hazards have been corrected before work or travel in such areas is conducted (except for those persons listed in Section 104(c) of the Mine Act, 30 U.S.C. §814(c)) or equipment is removed,  and require the Mine Superintendent, or his highest subordinate in his absence, to review and countersign all books and records once every 24 hours;

h.    require Freedom to take additional air quantity and quality readings in assigned work areas of the mine as

6

stipulated in item 3 hereof;

i. require Freedom to maintain an accurate map per 30 C.F.R. §75.1200 including a surface map and underground escapeway maps, on a daily basis, and maintain a record of any changes made;

j. require Freedom to maintain a record of any methane detected in excess of 1% on any section and 2% in any other active workings using a methane or multi-gas detector carried by any person underground;

k. require Freedom's management officials and supervisors to assign miners to work only in areas and on tasks for which they are qualified and trained;

l. require Freedom to provide task training to miners by a knowledgeable supervisor for each job which miners are assigned to, and maintain a record of such training signed by the miner's supervisor;

m. for any hazardous condition, or for any violation of safety or health standards, related to roof control, ventilation, coal accumulations, electrical equipment, or examinations, found by the Secretary, in any area where equipment removal operations are occurring, Freedom shall immediately withdraw all miners (except for those persons listed in Section 104(c) of the Mine Act, 30 U.S.C. §814(c)) from the affected area until such condition or violation is abated and a

complete examination has been conducted on that area;

n.   for any hazardous condition on any equipment, or for any violation of safety or health standards on any equipment, found by the Secretary, Freedom shall immediately withdraw such equipment from service (except for those persons listed in section 104(c) of the Mine Act, 30 U.S.C. §814(c)) until such condition or violation is abated; provided, however, that Freedom may request a courtesy inspection by the Secretary prior to moving any equipment.

o.   require  Freedom to post all citations and orders at the mine bathhouse, on a designated mine bulletin board and review same each day with all employees;

p.   require  Freedom to inspect the hoist rope as required in the regulations with an additional examination as in the 14 day exam requirement under 75.1433 after Defendants removes anything heavier than the load of a normal mantrip or supplies.  Specifically this exam must occur after removal of any face equipment including the feeder or a head drive.  This additional exam must take place after the load is completely hoisted and before the hoist is used again;

q.   require Freedom's supervisors to  brief miners on the conditions of the area of the mine before they are assigned to enter, work, or travel in such area and inform the miners of the hazardous conditions or any violations found and corrected

8

during the pre-shift examination;

   r.   require Freedom to maintain what were designated as the primary and alternate escapeways, prior to the mine being put in nonproducing status, or an MSHA-approved alternative, in conformity with the requirements set forth in 30 C.F.R. Section 75.380 at all times while miners are underground at the mine;

   4.   Where miners are idled as a result of any withdrawal covered by this Agreed Order, including the provisions of paragraphs 3(m) and 3(n), above,  FREEDOM  and all agents, servants, employees, contractors, and subcontractors thereof, and all persons in active concert or participation with it are ordered to pay the affected miners on the regularly scheduled payday for the period for which the miners were idled up to one week, or for periods longer than one week offer alternate equivalent work consistent with the usual procedure that Freedom offers alternative work to employees within a 60 mile driving distance.

   5.   The provisions of paragraphs  3 and 4, above, shall continue in effect until such time as the mine is permanently closed and sealed by Freedom in a manner required by 30 C.F.R. Part 75.

   6.   This Court shall retain jurisdiction of this matter for such other and further action as may be necessary to enforce the terms of this Agreed Order.

7.   All provisions herein are solely applicable to the closure of Freedom's Mine #1.

Dated 5th day of January, 2011, at 11:10 o'clock a.m. (EDT).



Signed By:

*Amul R. Thapar*

United States District Judge

AGREED AS TO FORM AND CONTENT: FOR THE PLAINTIFF:

M. PATRICIA
SMITH Solicitor of
Labor

STANLEY E. KEEN
Regional Solicitor

THERESA BALL
Associate Regional Solicitor

/s/ Mary Sue
Taylor MARY
SUE TAYLOR
Trial Attorney

Office of the Solicitor
U.S. Department of Labor
618 Church Street, Suite 230
Nashville, Tennessee 37215-2862
Phone; (615) 781-5330 ext. 225 Fax:
(615) 781-5321
E-mail:nash.fedcourt(ä~dol.ov Taylor. Mary(21~dol. gov

HEIDI W. STRASSLER
Associate Solicitor for Mine
Safety and Health

THOMAS A. PAIGE
KEITH E. BELL
Co-Counsels for Trial Litigation

/s/ Joshua P. Falk JOSHUA P. FALK
Trial Attorney

U.S. Department of Labor
Office of the Solicitor
Mine Safety & Health
Division 1100 Wilson
Blvd, 22nd Floor
Arlington, Virginia
22209-2296 Email:
falkjoshua@dol. gov

Attorneys for the Secretary
FOR THE DEFENDANTS:

/s/David L. Baird
Charles J. Baird
David L. Baird
Baird& Baird, P.S.C.
P.O. Box 351
Pikeville, Kentucky 41502
Phone: (606) 437-6276

Timothy M. Biddle
Thomas C. Means
Daniel W. Wolff
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 2004-2595
Phone: (202) 624-2500

Attorneys for Defendants